IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM MARSHALL, et al.,** | : | |
| Plaintiffs, | : | **Case No. 2:05-cv-484** |
| v. | : | **Judge Holschuh** |
| **CITY OF COLUMBUS, et al.,** | : | **Magistrate Judge King** |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

After experiencing property damage caused by rising surface water, Plaintiffs filed suit against numerous defendants including dozens of homeowners in a nearby subdivision. Count 4 of Plaintiffs' Second Amended Complaint alleges that these defendants have made unreasonable use of surface water, resulting in the flooding of Plaintiffs' property. This matter is currently before the Court on seven motions for summary judgment filed by various groups of the homeowner-defendants. (Record at 94, 98, 103, 107, 109, 117, 142). For the reasons stated below, the Court grants all of those motions for summary judgment.

**I.  Background and Procedural History**

According to the Second Amended Complaint, Plaintiffs William Marshall, Sharen Salyers, Angela and Christopher Bathrick, Robert and Brenda Locke, Kendele Wilson, and Sara Treneff own real property in Franklin Township on the southwest side of Columbus. Their property is located within the drainage area of Whims Ditch, a manmade ditch constructed in 1919 by Franklin County. Plaintiffs allege that in times of heavy rain, water from Whims Ditch floods their property. Plaintiffs have asserted various federal and state claims against Franklin

County, the City of Columbus, and numerous property owners in the area.

Count 4 of the Second Amended Complaint, which is the subject of the pending motions for summary judgment, alleges that Foxboro Communities, Inc., Maronda Homes, Inc., and the owners of 41 lots in the nearby Westmeadow Section I subdivision have made "unreasonable use of surface water." Plaintiffs maintain that the surface water from the lots in this subdivision drains into a storm water detention basin and then into tile storm sewers which empty into Whims Ditch, contributing to the flooding of Plaintiffs' property.

Seven separate groups of the defendant-homeowners have filed motions for summary judgment: (1) Kevin and Alicia Henderson (Record at 94); (2) Richard and Lori Hicks (Record at 98); (3) Jerry and Tina McCallister (Record at 103); (4) Sharon Adams, James and Jeanette Atkins, Oscar and Lisa Bermeo, Charles and Cathy Boyd, Michael Courtright, Susan Stoneman, Donald and Bonnie Glass, Garrett Cattell, and Pamela Kelly (Record at 107); (5) Jennie Sayaseng (Record at 109); (6) Richard and Cynthia Orf, Jack and Judy McCallister, Christopher and Lynette Deming, Frank and Jane Bruce, Shallon Smith, Benjamin and Barbara Brookes, Tracy Haynes-Castro, Jesse Howard, and Rashawn Reese-Howard (Record at 117); and (7) Dixie Rollyson (Record at 142).

Defendants all assert essentially the same arguments. They contend that because they did not design or construct the surface water drainage system in their subdivision, and have done nothing since purchasing the property to alter the drainage system, they cannot be held liable for damages to Plaintiffs' property. Defendants further contend that they owe no duty to abate a nuisance they did not affirmatively create. Plaintiffs have filed a single response to the motions; Defendants have filed separate replies.

**II.     Standard for Granting Summary Judgment**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as

3

well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

## III. Discussion

Plaintiffs' Second Amended Complaint alleges that Defendants, "in draining their individual surface water from their house into a detention pond, which is connected via a tile drain into Whims Ditch, have unreasonably used and disposed of the surface water on their property, which has resulted in the water in Whims Ditch flooding plaintiffs' homes." (Second Amd. Compl. ¶ 48). Plaintiffs seek recovery for damages to their real and personal property, reduction in their property values, lost wages, and suffering and inconvenience. (Id. at ¶ 49).

The parties agree that the applicable rule of law is set forth in McGlashan v. Spade Rockledge Terrace Condo Development Corporation, 62 Ohio St. 2d 55, 402 N.E.2d 1196 (Ohio

5

1980). In that case, the Ohio Supreme Court adopted the "reasonable use" rule for resolving surface water disputes. The rule, adopted from the Restatement on Torts 2d, is set forth as follows:

> (A) possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. *He incurs liability only when his harmful interference with the flow of surface water is unreasonable.*

Id. at 60, 402 N.E.2d at 1200 (emphasis added). The unreasonableness of defendant's conduct is determined "by balancing the gravity of the harm caused by the interference against the utility of the interferor's conduct." Id.

Assuming *arguendo* that Plaintiffs could establish the requisite causal connection between the allegedly faulty surface water drainage system for the Westmeadow Section I subdivision and damages to Plaintiffs' property, the key issue presented by the motions for summary judgment is whether the homeowner-defendants can be held liable under the circumstances presented here.[1] Ohio courts have determined that liability for unreasonable interference with surface water can arise through "(1) an act; or (2) failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the

---

[1] In their memorandum in opposition to the motions for summary judgment, Plaintiffs argue that, to the extent Defendants also seek summary judgment on the issue of proximate cause, Plaintiffs need additional time to respond. Discovery has not yet been completed and their expert witness has not been able to complete his report. However, because the Court finds that Defendants owed no duty to Plaintiffs, there is no reason to address the issue of proximate cause, or to delay ruling on the motions.

6

interference." Athens County Reg'l Planning Comm'n v. Simms, No. 05CA15, 2006 WL 1304857, 2006-Ohio-2342, at ¶ 14.

It appears to be undisputed that Defendants have not engaged in any affirmative conduct that interfered with the flow of surface water. They have each submitted an affidavit stating that they were not involved in designing or constructing the surface water drainage system in the subdivision. That system, designed, constructed, and approved by others, was already in place when they purchased the property. Moreover, Defendants were not involved with the grading of the lots, and have done nothing to alter the flow of the surface water since they purchased their lots. Defendants argue that because they have done nothing to interfere with the flow of surface water, they cannot be held liable.

Plaintiffs concede that if they were proceeding under a theory of absolute nuisance, which imposes strict liability, the absence of an affirmative act on the part of Defendants would foreclose recovery. See Beddow v. Norton Fireman's Ass'n, Inc., C.A. No. 18373, 1998 Ohio App. LEXIS 1783, at *5 (Ohio Ct. App. April 29, 1998) (holding that absolute nuisance requires that the tortfeasor commit an affirmative act; "[a]bsolute liability does not attach where a defendant has merely failed to abate a condition which he or she has not created."). Plaintiffs contend, however, that they are proceeding under a theory of qualified nuisance, which depends on proof of negligence and can be based either on an affirmative act or a failure to act.

As the court noted in Franklin County District Board of Health v. Paxson (2003), 152 Ohio App. 3d 193, 2003-Ohio-1331, 787 N.E.2d 59, at ¶ 30, "[u]nder the reasonable-use rule, unless the defendant's conduct is unlawful or subject to strict liability, the defendant's liability for interference with surface water flow is controlled by principles of common-law negligence,

7

regardless of whether the plaintiff's cause of action sounds in nuisance or trespass." In this case, the parties agree that defendant's conduct is not unlawful or subject to strict liability. Plaintiffs' claim is therefore analyzed as a negligence claim. Plaintiffs must, therefore, show duty, breach, proximate cause, and damages. Id.

The issue raised by the motions for summary judgment is whether the homeowner-defendants owed any duty to abate the alleged nuisance. Whether such a duty exists is a question of law to be determined by the Court. Mussivand v. David, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265 (Ohio 1989). As the court noted in Mussivand, there is no magic formula for ascertaining whether a duty exists. It depends largely on policy considerations. Id.

Section 366 of the Restatement (Second) of Torts, which addresses liability of possessors of land for artificial conditions existing when possession of the land is taken, states:

> One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,
>
> (a) the possessor knows or should know of the condition, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it.

Restatement (Second) of Torts § 366.

The first inquiry is whether the homeowner-defendants knew or should have known of the condition. Each defendant has submitted an affidavit stating that, prior to the filing of this lawsuit, they had no knowledge or information that would have led them to conclude that the

8

surface water drainage system in their subdivision could possibly affect the flow of surface water so as to cause flooding of Plaintiffs' property. Defendants Richard and Lori Hicks also stated that, prior to the filing of this lawsuit, they had never even heard of Whims Ditch. (Richard Hicks Aff. ¶ 8, Lori Hicks Aff. ¶ 7, Exs. to Hicks' Mot. Summ. J.). Plaintiffs have submitted no evidence to the contrary regarding Defendants' actual knowledge of the problem.

Plaintiffs, however, argue that Defendants *should have known* about the nuisance, and therefore had a duty to take positive action to abate it. Ohio courts have held that the existence of such a duty depends on the foreseeability of the alleged injury. Mussivand, 45 Ohio St. 3d at 320-21. "Foreseeability . . . in turn . . . must depend on knowledge." Thompson v. Ohio Fuel Gas Co., 9 Ohio St. 2d 116, 119-20, 224 N.E.2d 131 (Ohio 1967).

The question is whether a reasonably prudent person, standing in the shoes of the homeowner-defendants, should have known that the storm water drainage system in their subdivision would cause flooding of Plaintiffs' property, which is located some distance away, across a major road. Plaintiffs argue that Defendants are clearly on notice that the surface water from their lots drains into the storm water detention pond located at the entrance to the subdivision. Defendants' deeds state that the Westmeadow Homeowners Association owns the storm water detention pond and is responsible for maintenance of the pond. Plaintiffs then argue that because other public documents exist that show that water from that detention pond connects to drainage tiles which then empty into Whims Ditch, Defendants should have anticipated an unreasonable risk of flooding to Plaintiffs' property.

9

The Court rejects this argument for several reasons. First, Plaintiffs have not identified the "other public documents" on which they rely. Nor have they identified any authority for the proposition that potential purchasers of property have a duty to inspect public documents to determine where surface water runoff from that property eventually ends up. More importantly, even if Defendants had examined "other public documents" and determined that water from the detention pond eventually emptied into Whims' Ditch, they cannot be expected to possess the knowledge or skill to accurately assess whether the surface water drainage system for the subdivision posed an unreasonable risk of flooding to other property owners in the area. The court agrees with Defendants that, as a matter of public policy, they must be entitled to rely on the expertise of the developers, of the engineers who designed the drainage system, and on the government authorities who approved the plans.

The Court concludes that, under the circumstances presented here, the homeowner-defendants owed Plaintiffs no duty to abate the nuisance. They did not know of Plaintiffs' flooding problem, and there is no reasonable basis for finding that they should have known of the problem. Absent a duty to abate the nuisance, Defendants cannot be held liable for the damages to Plaintiffs' property. Because Plaintiffs cannot establish the existence of an element essential to their case, the Court finds that these Defendants are entitled to summary judgment in their favor.

**IV.	Conclusion**

For the reasons set forth above, the Court **GRANTS** Defendants' motions for summary judgment.  (Record at 94, 98, 103, 107, 109, 117, 142).

**IT IS SO ORDERED.**


Date: February 26, 2007				/s/ **John D. Holschuh**
						John D. Holschuh, Judge
						United States District Court